## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

### CASE NO:

ASHLEE JOHNSON, and all others similarly
situated pursuant to 29 U.S.C. § 216(b),

     Plaintiff(s),

     v.

SPEEDWAY, LLC, a Delaware
Limited Liability company,

     Defendant.

_____/

### COLLECTIVE/CLASS ACTION COMPLAINT FOR DAMAGES
### AND DEMAND FOR JURY TRIAL

Plaintiff, ASHLEE JOHNSON ("Plaintiff") on behalf of herself and all others similarly

situated pursuant to 29 U.S.C. § 216(b), Fed. R. Civ. P. 23, and the Illinois Minimum Wage Law

("IMWL") files this Collective/Class Action Complaint for Damages and Demand for Jury Trial

against Defendant, SPEEDWAY, LLC ("Defendant"), and alleges:

### INTRODUCTION

1.     Within the past 3 years, Defendant operated over 115 gas stations throughout the

State of Illinois. During periods of this time, Defendant employed numerous Sales Associate

Cashiers ("SAC's") at these gas stations. Certain SAC's are required to work the "graveyard shift"

which results in them working in excess of forty (40) hours in a workweek. When SAC's work the

"graveyard shift" they are provided a shift premium which is added to their regular hourly rate.

However, this increased hourly rate is not factored into the overtime premium calculated for SAC's

when they work over 40 hours in a workweek. Defendant has intentionally and willfully failed to

compensate these SAC's proper overtime wages in one or more workweeks during the past 3 years under the Fair Labor Standards Act ("FLSA") and Illinois Minimum Wage Law ("IMWL"). Through this lawsuit, Plaintiff seeks to recover all overtime wages owed to these SAC's.

## PARTIES

2.      During all times material hereto, Plaintiff was a resident of Chicago, Illinois, over the age of 18 years, and otherwise *sui juris*.

3.      During all times material hereto, Defendant was a Delaware limited liability company located and transacting business throughout Illinois, including within the jurisdiction of this Honorable Court.

4.      Defendant may be served through its registered agent, Corporate Creations Network, Inc. at 1521 Concord Pike, Suite 201 in Wilmington, Delaware 19803.

5.      During all times material hereto, Defendant was vested with control and decision-making authority over the scheduling, hiring, firing, day-to-day operations, and pay practices that pertained to Plaintiff and the SAC collective and class.

6.      During all times material hereto, Defendant also managed and controlled the work performed by Plaintiff and administered and enforced Defendant's pay practices and policies as they applied to the SAC's employed within the past 3 years.

7.      Defendant was Plaintiff's employer, as defined by 29 U.S.C. § 203(d), during all times pertinent to the allegations herein.

8.      Defendant was Plaintiff's employer, as defined by the IMWL.

## JURISDICTION AND VENUE

9.      All acts and/or omissions giving rise to this dispute took place within Summit, Illinois, which falls within the jurisdiction of this Honorable Court.

10.     Defendant regularly transacts business throughout Illinois, including at 5800 S. Harlem Ave. in Summit, Illinois 60501, and jurisdiction is therefore proper within the Northern District of Illinois pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

11.     Venue is also proper within the Northern District of Illinois pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1391(b).

## DEFENDANT EMPLOYS SALES ASSOCIATE CASHIERS THROUGHOUT ILLINOIS

12.     During the past 3 years Defendant operated over 115 Speedway gas stations throughout the State of Illinois, including the Speedway gas station located at 5800 S. Harlem Ave. in Summit, Illinois.

13.     Defendant employed Sales Associate Cashiers ("SAC's") at these gas stations to operate cash registers, stock various products on shelves, and assist customers with their purchases.

14.     Defendant compensates the SAC's employed in Illinois on an hourly basis.

15.     A majority of the Speedway gas stations owned and operated by Defendant in Illinois are open to the public twenty-four (24) hours each day.

16.     Defendant's "around the clock" operation at these locations requires them to schedule SAC's to work overnight shifts from the hours of 10:00 p.m. to 6:00 a.m.

17.     These overnight shifts are known and referred to as the "graveyard shift."

18.     When Defendant schedules these SAC's to work a "graveyard shift" the Defendant increases the SAC's hourly rate by $1.00 per hour.

19.     However, when SAC's work a "graveyard shift" in a workweek where they work more than 40 hours, the Defendant does not include this $1.00 premium shift pay in its calculation of the overtime wages owed to the SAC's.

3

20.     For example, when a SAC is ordinarily earning $15.00 per hour as their regular hourly rate, Defendant compensates the SAC $16.00 per hour for any hours worked during the "graveyard shift."

21.     However, if the SAC works a "graveyard shift" in a workweek where they work more than 40 hours in a workweek, the Defendant only pays the SAC $22.50 per hour for overtime hours without including the $1.00 differential pay for hours worked during the "graveyard" shift.

22.     Defendant systematically and uniformly applies this pay policy to all SAC's employed at any Speedway location its owns and/or operates in the State of Illinois.

### DEFENDANT'S POLICY VIOLATES FEDERAL AND STATE LAW

23.     Under federal law, "[t]he general overtime pay standard in Section 7(a) requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed." *See* 29 C.F.R. § 778.107.

24.     Pursuant to 29 C.F.R. § 778.207(b), "the [FLSA] requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a percent of the base rate or an addition of so many cents per hour) and premiums paid for hazardous, or arduous or dirty work." *See, also, Parker v. IAS Logistics DFW, LLC,* 2021 WL 1121082 (N.D. Ill. Mar. 24, 2021) (granting conditional certification of FLSA collective action based on defendant's failure to include shift differential pay into overtime rate calculation); *Rapp v. Forest City Technologies, Inc.,* 2021 WL 2982005 (N.D. Oh. July 15, 2021) (granting collective and class certification based on defendant's failure to include shift differential pay into overtime rate calculation); *Drayton v. City of New York,* 2023 WL 3479619 (S.D.N.Y. May 16, 2023) *citing Johnson v. D.M. Rothman Co.,* 861 F.Supp.2d 326 (S.D.N.Y. 2012) ("An employee's regular rate of pay includes shift differentials").

25.     Defendant's pay policy at issue in this case violated the FLSA because it failed to include the nightshift pay differentials in the regular rate of pay when determining the appropriate overtime premium to pay to the SAC's who worked more than 40 hours in a workweek.

26.     "The overtime provisions of the Illinois Minimum Wage Law, 820 ILCS 105/4a(1), is parallel to that of the [Fair Labor Standards Act of 1938 (29 U.S.C. 201 et seq.)], and Illinois courts apply the same principles." *See, e.g., Resurrection Home Health Services v. Shannon,* 983 N.E.2d 1079 (Ill. 1st Dist. Jan. 10, 2013) *quoting Urnikis-Negro v. American Family Property Services,* 616 F.3d 665, 672 n.3 (7th Cir. 2010).

27.     Defendant's pay policy at issue in this case violated the IMWL because it failed to include the nightshift pay differentials in the regular rate of pay when determining the appropriate overtime premium to pay to the SAC's who worked more than 40 hours in a workweek.

## PLAINTIFF'S WORK FOR DEFENDANT

28.     Defendant employed Plaintiff as a SAC at its Summit, Illinois, location from October 2023 through on or around May 24, 2024.

29.     Defendant maintained direct control and supervision over the work performed by Plaintiff and the Collective and Class during their employment periods.

30.     Defendant was responsible for paying Plaintiff and the Collective and Class wages for work performed during the relevant time period.

31.     Defendant maintained direct control over the scheduling of Plaintiff and the Collective and Class during their employment periods.

32.     During Plaintiff's employment period, Defendant regularly scheduled Plaintiff to work the "graveyard shift" from 10:00 p.m. until 6:00 a.m.

33.     Defendant compensated Plaintiff a regular hourly rate of $15.00 per hour.

34.     Defendant compensated Plaintiff an additional $1.00 per hour when Plaintiff worked the "graveyard shift" for an hourly rate of $16.00 per hour.

35.     Defendant often required Plaintiff to work more than 40 hours in a workweek.

**February 1, 2024, through February 7, 2024**

36.     For example, from February 1, 2024, through February 7, 2024, Plaintiff worked a total of 41.13 hours for Defendant. All regular hours worked by Plaintiff during this time period were worked during the "graveyard shift" and paid at the rate of $16.00 per hour which was comprised of the $15.00 per hour rate plus the $1.00 per hour shift premium. In light of the $16.00 hourly rate, Plaintiff's overtime rate should have been $24.00 per hour. However, Defendant only compensated Plaintiff $22.99 per overtime hour during this pay period. The screenshot below is a fair and accurate representation of Defendant's pay records and support this allegation:



6

37.     Defendant's unlawful compensation of Plaintiff was not limited to that one workweek.

**February 15, 2024, through February 21, 2024**

38.     From February 15, 2024, through February 21, 2024, Plaintiff worked a total of 41.33 hours for Defendant. All regular hours worked by Plaintiff during this time period were worked during the "graveyard" shift and paid at the rate of $16.00 per hour which was comprised of the $15.00 per hour rate plus the $1.00 per hour shift premium. In light of the $16.00 hourly rate, Plaintiff's overtime rate should have been $24.00 per hour. However, Defendant compensated Plaintiff $22.99 per overtime hour during this pay period. The screenshot below is a fair and accurate representation of Defendant's pay records for Plaintiff which support this allegation:

39.     Defendant committed overtime wage violations against Plaintiff in several other workweeks during the relevant time period.

40.     Defendant maintains video surveillance cameras in its store locations and therefore knew, or should have known, of the work Plaintiff and the Collective and Class performed for Defendant.

41.     Defendant therefore had express and/or constructive knowledge of work performed by Plaintiff and the Collective and Class.

42.     During the previous three (3) years the Defendant has not paid Plaintiff, or the Collective or Class, proper state and federal overtime wages when they worked more than forty (40) hours in a workweek.

## FLSA COLLECTIVE IS COMPRISED OF SIMILARLY SITUATED SALES ASSOCIATE CASHIERS

43.     During time periods within the previous three (3) years, Defendant enacted and enforced a company-wide policy in which it failed to compensate Plaintiff and other similarly situated SAC's proper federal overtime wages as a result of their failure to include shift premium rates into the overtime calculation.

44.     Defendant implemented and enforced this company-wide policy against Plaintiff and similarly situated SAC's regardless of where they performed work in Illinois.

45.     Defendant specifically authorized and/or directed Plaintiff and similarly situated SAC's to work more than forty (40) hours in a workweek.

46.     Defendant did not compensate Plaintiff and similarly situated SAC's proper federal and/or state overtime wages for this work.

47.     Moreover, Defendant was aware that Plaintiff and similarly situated SAC's worked in excess of forty (40) hours in one or more workweeks.

48.     Accordingly, Plaintiff seeks to represent the following Collective of similarly situated individuals:

> **All Sales Associate Cashiers employed by Defendant during the previous three (3) years in the State of Illinois who worked a graveyard shift in any week where they worked more forty (40) hours.**

49.     Defendant treats Collective members equally and similarly in that they were denied proper federal overtime wages as a result of Defendant's unlawful policy which fails to shift premiums into the statutory overtime wage calculation when they work more than forty (40) hours per week.

50.     Defendant's pay policies uniformly lead to federal overtime wage violations with respect to each and every SAC who worked in excess of forty (40) hours per week which included one or more hours worked during a "graveyard" shift. For example, regardless of their hourly rate, all SAC's are similarly situated because all of them were subject to the same uniform wage violation and none of them received proper overtime pay.

51.     Defendant has employed dozens of SAC's throughout Illinois in the past 3 years who were not paid proper federal overtime wages in accordance with the FLSA and pertinent federal regulations.

52.     Plaintiff is aware of other similarly situated SAC's were subjected to the same unlawful employment policies during the previous three (3) years.

## ILLINOIS CLASS IS COMPRISED OF SIMILARLY SITUATED SALES ASSOCIATE CASHIERS

53.     During time periods within the previous three (3) years, Defendant enacted and enforced a company-wide policy in which it failed to compensate Plaintiff and other similarly

situated SAC's proper Illinois overtime wages as a result of their failure to include shift premium rates into the overtime calculation.

54.     Defendant implemented and enforced this company-wide policy against Plaintiff and similarly situated SAC's regardless of where they performed work in Illinois.

55.     Defendant specifically authorized and/or directed Plaintiff and similarly situated SAC's to work more than forty (40) hours in a workweek.

56.     Defendant did not compensate Plaintiff and similarly situated SAC's proper Illinois overtime wages for this work.

57.     Moreover, Defendant was aware that Plaintiff and similarly situated SAC's worked in excess of forty (40) hours in one or more workweeks.

58.     Accordingly, Plaintiff seeks to represent the following Class of similarly situated individuals:

> **All Sales Associate Cashiers employed by Defendant during the previous three (3) years in the State of Illinois who worked a graveyard shift in any week where they worked more forty (40) hours.**

59.     The precise size and identity of the class should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendant; however, Plaintiff estimates that the total number of class members exceeds 150 individuals.

60.     Class members are treated equally and similarly by Defendant, in that they were commonly mistreated by Defendant as they were not paid full and proper Illinois overtime wages for all hours worked.

61.     Defendant employed in excess of 40 class members who were not paid proper Illinois overtime wages for certain hours worked within the past three (3) years.

62.     Plaintiff and class members worked in the same position at gas stations throughout the State of Illinois.

63.     Plaintiff and class members performed the same job duties as SAC's and were paid in an identical manner by Defendant based on Defendant not compensating them in accordance with Illinois law.

64.     Plaintiff and class members were not paid proper Illinois overtime wages for all hours worked.

65.     Defendant failed to keep accurate pay records for Plaintiff and all class members.

66.     Defendant was aware of the requirements of Illinois law yet acted willfully in failing to pay Plaintiff and the class members in accordance with the law.

67.     Plaintiff has hired the undersigned law firm to represent him in this matter and is obligated to pay reasonable attorney's fees and costs if she prevails.

68.     The claims alleged under Illinois law may be pursued by all similarly situated persons pursuant to Fed. R. Civ. P. 23.

69.     The number of individuals in the class is so numerous that joinder of all members is impracticable.  The exact number of members of each class can be determined by reviewing Defendant's records.  Plaintiff, on information and belief, is aware that there are numerous eligible individuals in the defined class and estimates the class size to be in excess of 150 individuals.

70.     Plaintiff will fairly and adequately protect the interests of the class and has retained counsel which is experienced and competent in class action employment litigation.

71.     Plaintiff has no interests contrary to or in conflict with the members of the class.

72.     A class action lawsuit, such as this one, is superior to other available means for fair and efficient adjudication of the issues alleged herein.  The damages suffered by individual

members of the class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the class to individually seek redress for the wrongs done to them.

73.     A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, many members of the class likely will not obtain redress of their damages and Defendant will retain the proceeds of their violations of Illinois law.

74.     Even if every member of the class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.  Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

75.     There is a well-defined community of interest in the questions of law and fact affecting the class as a whole.  The questions of law and fact common to the class predominate over any questions affecting solely the individual members.  Among the common questions of law and fact are:

a.      Whether Defendant employed SAC's within meaning of the law;

b.      Whether Defendant uniformly, willfully, and wrongfully failed to pay SAC's the correct Illinois overtime wage rate for all overtime hours worked;

c.      What remedies are appropriate compensation for the damages caused to Plaintiff and each member of the class; and

d.      Whether Defendant's failure to compensate Plaintiff and the class members at the applicable Illinois overtime wage was willful, intentional, or done with reckless disregard.

76.     The relief sought is common to the entire class including:

a. Payment by Defendant of actual damages caused by their failure to pay overtime wages pursuant to Illinois law;

b. Payment by Defendant of liquidated damages caused by their failure to pay overtime wages pursuant to Illinois law;

c. Payment by Defendant of the costs and expenses of this action, including attorney's fees to Plaintiff's counsel.

77. Plaintiff's claims are typical of the claims of members of the class.

78. Plaintiff and the class members have sustained damages arising out of the same wrongful and uniform employment policies of Defendant in violation of Illinois law.

79. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance as a class action.

80. As a result of Defendant's intentional and willful failure to comply with the FLSA and Illinois law, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs incurred in the prosecution of these claims.

## FLSA COVERAGE

81. Defendant is covered under the FLSA through enterprise coverage, as Defendant was engaged in interstate commerce during all pertinent times in which Plaintiff was employed. More specifically, Defendant engaged in interstate commerce through its business activities that involved those to which the FLSA applied. Defendant's business and Plaintiff's work for Defendant affected interstate commerce because the materials and goods that Plaintiff used on a constant and/or continuous basis moved through interstate commerce prior to or subsequent to Plaintiff's use of the same.

82.     During her employment with Defendant, Plaintiff, and various other similarly situated employees, handled and worked with various goods and/or materials that moved through interstate commerce, including, but not limited to the following: cash registers, restroom keys, food items, beverage items, car accessories, phone chargers, extension cords, keyboards, desktop computers, telephones, cables, pens, paper, pencils, etc.

83.     Defendant also regularly employed two (2) or more employees for the relevant time period, who handled the same or similar goods and materials handled by Plaintiff, thus making Defendant's business an enterprise covered by the FLSA.

84.     Defendant grossed or did business in excess of $500,000.00 in the years 2021, 2022, 2023, and is expected to gross in excess of $500,000.00 in the year 2024.

85.     During their employment with Defendant, Plaintiff and the Collective were regularly and recurrently engaged in an instrumentality of interstate commerce and subject to individual coverage, as that term is defined by the FLSA. More specifically, Plaintiff and the Collective used the interstate telephone system to speak with Defendant's customers regularly and recurrently over the phone who, at times, resided out of the state of Illinois.

86.     During their employment with Defendant, Plaintiff and the Collective: (i) were paid on an hourly basis; (ii) worked more than 40 hours in one or more workweeks; (iii) did not receive proper federal overtime wages; (iv) were economically dependent on Defendant for work; and (v) were under the direct supervision and control of Defendant.

87.     During all times material hereto, Plaintiff was a non-exempt employee of Defendant, within the meaning of the FLSA.

## COUNT I – FEDERAL OVERTIME WAGE VIOLATIONS – 29 U.S.C. § 207
### (Overtime Shift Premium Collective)

88.     Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 86 as through set forth fully herein.

89.     Plaintiff alleges this Collective Action Complaint pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

90.     Plaintiff intends to seek conditional certification of the Overtime Shift Premium Collective ("OSP Collective").

91.     Defendant enforced a company-wide policy that failed to compensate SAC's (including Plaintiff) when Defendant required these SAC's to work a "graveyard shift" in the same week where they worked more than 40 hours in a workweek during the previous three (3) years.

92.     Defendant refused to pay Plaintiff and all other similarly situated SAC's one-and-one-half times the applicable regular hourly rate for all hours worked over forty (40) in one or more weeks of their employment.

93.     Plaintiff seeks certification under 29 U.S.C. § 216(b) of the following similarly situated OSP Collective for Defendant's failure to pay federal overtime wages:

> **All Sales Associate Cashiers employed by Defendant during the previous three (3) years in the State of Illinois who worked a graveyard shift in any week where they worked more forty (40) hours.**

94.     Plaintiff claims the applicable federal overtime wage rate for all of the unpaid hours over forty (40) that she worked during her employment period.

95.     Defendant's failure to comply with the FLSA was willful and/or intentional.

96.     Defendant knew of its obligation to pay an overtime rate of 1.5 times the regular hourly rate, but Defendant failed (or refused) to investigate whether it was required to include the shift premium payments into the calculation of the regular hourly rate.

97.     Defendant's failure to comply with the FLSA was willful and/or intentional because Defendant knew or should have known of the FLSA's federal overtime wage requirements as they apply to SAC's and disregarded same. Defendant indicated its knowledge and awareness of wage and hour requirements but nevertheless refused to comply with these requirements.

98.     Furthermore, when Defendant decided to enforce its unlawful policy concerning federal overtime wages, it could have easily accessed publicly available information from the Department of Labor through the available DOL Fact Sheets (at no cost to Defendant) concerning the proper overtime wage requirements under the FLSA but failed to do so.

99.     Defendant knew Plaintiff and all similarly situated SAC's worked over forty (40) hours in at least one workweek, but willfully implemented and enforced its policy of failing to pay Plaintiff and the Collective the correct federal overtime wages, contrary to the FLSA.

100.    As a direct and proximate result of Defendant's deliberate underpayment of wages, Plaintiff and the OSP Collective have been damaged in the loss of federal overtime wages for one or more weeks of work during their employment with Defendant.

101.    Defendant's willful and/or intentional violations of federal wage law entitle Plaintiff to an additional amount of liquidated, or double, damages, because Defendant cannot establish any subjective and/or objective good faith basis for why they committed these violations.

102.    Moreover, because of Defendant's willful and/or intentional violations of the FLSA, the statute of limitations in this action should be three (3) years as opposed to two (2) years.

WHEREFORE, Plaintiff, ASHLEE JOHNSON, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, SPEEDWAY, LLC, and award Plaintiff: (a) unpaid federal overtime wages; (b) liquidated damages; (c) reasonable attorney's fees and costs; and all such further relief as deemed just and reasonable under the circumstances.

## COUNT II – RULE 23 CLASS ACTION FOR ILLINOIS OVERTIME WAGE VIOLATIONS
### (Overtime Shift Premium Class)

103. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 86 as though set forth fully herein.

104. Plaintiff and the proposed Illinois Overtime Shift Premium Class ("OSP Class") members were subjected to similar violations of the IMWL. Plaintiff seeks class certification under Fed. R. Civ. P. 23 of the following class for Defendant's failure to pay Illinois' mandated overtime wages:

> **All Sales Associate Cashiers employed by Defendant during the previous three (3) years in the State of Illinois who worked a graveyard shift in any week where they worked more forty (40) hours.**

105. Illinois law incorporates the FLSA regulations, case law, and administrative interpretations.

106. During one or more workweeks within the past 3 years Defendant failed to pay Plaintiff and other similarly situated Servers the applicable overtime wages required under Illinois law when Plaintiff and SAC's worked a graveyard shift in a workweek where they worked more than 40 hours.

## RULE 23 CLASS ALLEGATIONS

107. Plaintiff brings her IMWL claim arising from the Illinois Overtime violations as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

108.    In one or more workweeks within the past 3 years the Defendant failed to pay Plaintiff and similarly situated SAC's at least 1.5 times their applicable regular hourly rate for each overtime hour worked.

109.    The Overtime Shift Premium Class members are treated equally and similarly by Defendant, in that they were denied full and proper Illinois overtime wages because they failed to include shift premiums into the overtime calculation for SAC's when they worked over 40 hours in a workweek.

110.    Plaintiff and the Overtime Shift Premium Class members performed the same job duties as SAC's and were paid in an identical manner by Defendant based on their failure to compensate SAC's the applicable Illinois overtime wages.

111.    *Numerosity:* Defendant employed more than 40 SAC's in the Overtime Shift Premium Class during the past three (3) years who were not paid Illinois overtime wages as a result of the Defendant failing to pay Plaintiff and the Overtime Shift Premium Class members at least 1.5 times their applicable regular hourly rate for overtime hours worked. Given Defendant's size and the systematic nature of its failure to comply with Illinois law, the members of the Overtime Shift Premium Class are so numerous that joinder of all members is impractical.

112.    Plaintiff and the Overtime Shift Premium Class members were subject to the same policies.

113.    *Commonality:* Common questions of law and fact exist as to all members of the Overtime Shift Premium Class and predominate over any questions solely affecting any individual member of the Overtime Shift Premium Class, including Plaintiff.  Such questions common to the Overtime Shift Premium Class include, but are not limited to the following:

(a)     Whether Plaintiff and the Overtime Shift Premium Class were "employees" of Defendant;

(b)     Whether Plaintiff and the Overtime Shift Premium Class's hours were properly recorded;

(c)     Whether Defendant paid Plaintiff and the Overtime Shift Premium Class the applicable overtime wages for all hours worked over 40 in a workweek;

(d)     Whether Defendant violated the Illinois overtime wage rights of Plaintiff and the Overtime Shift Premium Class under the Illinois Minimum Wage Law by failing to pay applicable overtime wages;

(e)     Whether Defendant willfully or intentionally refused to pay Plaintiff and the Overtime Shift Premium class the Illinois overtime wages as required under Illinois law;

(f)     Whether Defendant knew or should have known of the Illinois overtime wage requirements and either intentionally avoided or recklessly failed to investigate proper payroll practices; and

(g)     The nature, extent, and measure of damages suffered by the Plaintiff and the Class based upon Defendant's conduct.

114.    *Typicality:* Plaintiff's claims are typical of the claims of the members of the Illinois Overtime Class.  Plaintiff's claims arise from the Defendant's company-wide policy of failing to pay SAC's applicable overtime wages when they worked over 40 hours in a workweek. Plaintiff and the class members performed the same job duties, as SAC's, and were paid in an identical manner by Defendant based on Defendant's failure to compensate all SAC's the applicable overtime wages for all overtime hours worked during their employment.

115. *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Overtime Shift Premium Class. Plaintiff has no interest that might conflict with the interests of the Overtime Shift Premium Class. Plaintiff is interested in pursuing her claims against Defendant vigorously and has retained counsel competent and experienced in class and complex litigation.

116. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

117. Defendant has acted on grounds generally applicable to the Overtime Shift Premium Class, thereby making relief appropriate with respect to the Overtime Shift Premium Class as a whole. Prosecution of separate actions by individual members of the Overtime Shift Premium Class would create the risk of inconsistent or varying adjudications with respect to the individual members of the Overtime Shift Premium Class that would establish incompatible standards of conduct for Defendant.

118. Without a class action, Defendant will likely continue to retain the benefit of their wrongdoing and will continue a course of conduct that will result in further damages to Plaintiff and the Overtime Shift Premium Class.

119. Defendant failed to keep accurate time and pay records for Plaintiff and all class members to designate how many overtime hours were actually worked and not paid at the applicable overtime rate.

20

120.     Defendant was aware of the requirements of the IMWL, and provisions of the FLSA that are incorporated into the IMWL, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Overtime Shift Premium Class members in accordance with the law.

121.     The precise size and identity of the Overtime Shift Premium Class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendant; however, Plaintiff estimates that the total number of Overtime Shift Premium Class members exceeds 40 SAC's.

122.     Plaintiff and the Overtime Shift Premium Class members are entitled to receive at least 1.5 times their applicable regular hourly rate for each overtime hour worked during the past 3 years.

123.     The additional persons who may become Plaintiffs in this action are employees with positions similarly situated to Plaintiff and who suffered from the same pay practices of not being properly paid at least Illinois' overtime wages for each overtime hour worked.

124.     Plaintiff has complied with pre-suit notice requirements (if applicable), and/or all other conditions precedent to this action have been performed, or waived.

125.     Overtime Shift Premium Class members are treated equally and similarly by Defendant, in that they were denied full and proper Illinois overtime wages as a result of Defendant's failure to pay the applicable overtime wage for each overtime hour worked.

126.     Defendant was aware of the requirements of the IMWL, and the pertinent regulations thereto, yet acted willfully in failing to pay Plaintiff and the Overtime Shift Premium Class members in accordance with the law.

127.     A class action suit, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit. The damages suffered by individual members of the class may

be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the class to individually seek redress for the wrongs done to them.

128.     A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, many members of the class likely will not obtain redress of their damages and Defendant will retain the proceeds of their violations of the IMWL.

129.     Furthermore, even if every member of the class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy, efficiency, and parity among the claims of individual members of the class and provide for judicial consistency.

130.     The relief sought is common to the entire class including, inter alia:

(a)     Payment by the Defendant of actual damages caused by their failure to pay Illinois overtime wages pursuant to the IMWL;

(b)     Payment by the Defendant of liquidated damages caused by their willful and/or intentional failure to pay overtime wages pursuant to the IMWL;

(c)     Payment by the Defendant of the costs and expenses of this action, including reasonable attorney's fees of Plaintiff's counsel.

131.     As a result of the violations alleged herein, Plaintiff was required to retain the undersigned counsel and is therefore entitled to recover reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, ASHLEE JOHNSON, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, SPEEDWAY, LLC, and award Plaintiff, and the putative Class: (a) unpaid overtime wage damages to be paid by Defendant; (b) liquidated damages to be paid by Defendant; (c) all reasonable attorney's fees and costs as permitted under

Illinois law to be paid by Defendant, and any and all such further relief as this Court may deem just and reasonable under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff, ASHLEE JOHNSON, hereby demands a trial by jury on all appropriate claims on behalf of herself and all others similarly situated.

**Dated: July 26, 2024.**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS-
JORDAN RICHARDS, PLLC**
1800 SE 10th Ave, Suite 205
Fort Lauderdale, Florida 33316
Ph: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Illinois Bar No. 6328923
PATRICK SOLBERG, ESQUIRE
Illinois Bar No. 6243928
*Jordan@jordanrichardspllc.com*
*Patrick@usaemploymentlawyers.com*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on July 26, 2024.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Illinois Bar No. 6328923

## **SERVICE LIST:**